# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

IN RE:                                    BK 07-71774-CMS-13

**TAMEKA T. CHURCH**
**ALPHONSO RANCHER**

       **DEBTORS**

## <u>MEMORANDUM OPINION</u>

This matter came before the court on the Bankruptcy Administrator's ("BA") Motion for Examination of Debtors' Transactions with Attorney. (Bk. Doc. 43). Joseph E. Bulgarella appeared on behalf of the BA; Tessie P. Clements ("Attorney Clements") appeared on behalf of herself; W. McCollum Halcomb appeared on behalf of C. David Cotthingham, the Chapter 13 Trustee ("Trustee"); and Robert A. Morgan appeared on behalf of Tameka T. Rancher[1] ("Mrs. Rancher") and Alphonso Rancher ("Mr. Rancher") (collectively "the Debtors"). After consideration of the evidence submitted at the hearing and the arguments of counsel, this court finds that Attorney Clements failed to meet her burden of proving that she did not receive $1,200 from the Debtors prepetition and therefore, Attorney Clements failed to disclose the receipt of the $1,200 as required by 11 U.S.C. § 329 and Federal Rule of Bankruptcy Procedure 2016. As a result, this court imposes the following sanctions: Attorney Clements is required to pay $1,200 to the Trustee within 30 days of the entry of the order disposing of this matter and such $1,200 shall be used to pay creditors in the Debtors' bankruptcy case; Attorney Clements is denied her entitlement to the portion of her $850 fee that the

---

[1]It is not clear to the court which name Mrs. Rancher would like to be called because she filed the petition as Tameka Church, but indicated her name was Tameka Rancher after being sworn in to testify. Therefore, this court will address her as Mrs. Rancher.

Chapter 13 Trustee has not yet disbursed.

## JURISDICTION

The Bankruptcy Court has jurisdiction of Debtors' Chapter 13 case pursuant to 28 U.S.C. § 1334(a). This court has jurisdiction of this issue, a core bankruptcy proceeding, pursuant to 28 U.S.C. § 1334(b). Jurisdiction is referred to the bankruptcy courts by the General Order of Reference of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As Amended July 17, 1984.

## FINDING OF FACTS

This matter is before the court on the BA's Motion for Examination of Debtors' Transactions with Attorney. The BA became concerned about the accuracy of the Disclosure of Compensation of Attorney for Debtor ("Disclosure Statement") filed by Attorney Clements when Mrs. Rancher called the BA's office to assert a grievance against Attorney Clements.[2] During the course of the phone call, Mrs. Rancher stated that she was frustrated because she had paid Attorney Clements $1,200 to file a bankruptcy petition and now Attorney Clements refused to communicate with her or her husband, the joint debtor. This statement caused the BA concern because the $1,200 figure cited by Mrs. Rancher was inconsistent with Attorney Clements' Disclosure Statement, which stated that Attorney Clements was paid $0.00 by the Debtors prepetition. Whether this unsolicited statement by Mrs. Rancher is true is at the center of this controversy.

The Debtors made an initial appointment with Attorney Clements in early-to-mid-September, 2007, because they wished to breach a real estate contract to sell their residential home located at

---

[2]Mrs. Rancher's main complaint was that Attorney Clements refused to return her phone calls or schedule an appointment.

2

4126 Keene Mill Drive, Tuscaloosa, Alabama 35404.[3]  The closing on the sale of the Debtors' home

was to take place shortly after the Debtors' initial meeting with Attorney Clements,[4] and the Debtors

were behind on other bills, so Attorney Clements decided that filing a bankruptcy petition was in the

Debtors' best interests.  These two facts comprise the vast majority of undisputed facts in this case.[5]

From this point on, the Debtors and Attorney Clements tell two very different versions of the events.

The Debtors assert that during the initial meeting with Attorney Clements they were told the

fee to file a bankruptcy petition was $1,200, and that the $1,200 would have to be paid before such

petition would be filed.  Debtors did not have that kind of money on hand.  Therefore, in an effort

to fund Attorney Clements' attorney fees, the Debtors assert that they borrowed $4,636.45 from

Acceptance Loan Company, Inc. ("Acceptance") on September 18, 2007; of the $4,636.45,

$3,383.87 was used to payoff a lien on Mr. Rancher's vehicle, which was used as collateral for the

loan, and $1,252.58 was given directly to the Debtors in the form of a check, which the Debtors

cashed immediately.[6]  (BA Exhibit 5).  The Debtors further testified that they went by Attorney

---

[3]Prior to listing their residential home for sale, the Debtors were having marital problems and decided to separate and live in separate households.  While the Debtors were separated, a default on the mortgage payments for Debtors' residential home occurred.  Such default triggered the Debtors' decision to sell.  After signing a purchase agreement, the Debtors reconciled and decided that they were no longer interested in selling their residential home.

[4] A copy of the real estate contract shows an original closing date of September 14, 2007. (Defendant Exhibit 1).

[5]Because almost all of the facts in this case are disputed, the determination of who has the burden of proof is critical to the outcome of this case.  This will be discussed in greater detail in the Conclusions of Law section.

[6]From the $1,253.58 received from the Acceptance loan, the Debtors used $1,000.00 to pay Attorney Clements, and $252.58 to pay expenses of Mr. Rancher.  Mrs. Rancher borrowed $200.00 from her mother.  Between the money borrowed from Acceptance and the money

3

Clements' office on the afternoon of September 18, 2007, and gave the $1,200 to Attorney Clements'
secretary, a young white female of medium build, while Attorney Clements was present.  The
Debtors testified that they received a receipt for the $1,200, but they were not able to produce the
receipt at the hearing because it had been misplaced.

Attorney Clements' version of events differs markedly from the Debtors'.  Attorney Clements
testified that no payments were made to her or to her office prior to the filing of the Debtors'
bankruptcy petition.  The Debtors' voluntary chapter 13 bankruptcy petition, which was filed by
Attorney Clements on October 5, 2007, supports Attorney Clements' testimony.  (Bk. Doc. 1).
Attorney Clements' Disclosure of Compensation, filed as part of the Debtors' bankruptcy petition,
supports Attorney Clements' testimony because it certifies that Attorney Clements agreed to accept
$850.00 as compensation for handling Debtors' case and also certifies that Attorney Clements
received no money from Debtors prepetition.  (Bk. Doc. 1).   The Debtors' Statement of Financial
Affairs, filed as part of the Debtors' bankruptcy petition, also supports Attorney Clements'
testimony: Question 9 of the Debtors' Statement of Financial Affairs requires the Debtors to list all
prepetition payments related to debt counseling or bankruptcy; no payments were listed - not the
alleged $1,200 attorney fee, and not the $35 credit counseling fee.[7]  (Bk. Doc. 1).  The Debtors' plan,
filed by Attorney Clements on October 5, 2007, is also consistent with Attorney Clements'
testimony: the plan listed total attorney fees at $850.00 and listed $0.00 as the amount of money paid

_____

borrowed from Mrs. Rancher's mother, the Debtors had enough money to pay Attorney Clements
to file a bankruptcy petition.

[7]The Statement of Financial Affairs is supposed to be executed by the debtor under
penalty of perjury, but, as discussed in greater detail shortly, the Debtors' never signed the
Statement of Financial Affairs so it was never executed under penalty of perjury.

4

by the Debtors prepetition.[8]  Unfortunately for Attorney Clements,  this court will not be able to give these documents the weight they are normally given: The evidence shows that in this case, the Debtors never signed the petition, the schedules, or the chapter 13 plan.[9]  Attorney Clements testified that she did not obtain any original signatures from the Debtors.[10]   Attorney Clements further testified that she remembers going over the petition with Mrs. Rancher, but that she did not specifically remember going over the petition with Mr. Rancher prior to filing such bankruptcy petition. In addition to Attorney Clements' testimony, the Debtors testified that they never went over their bankruptcy petition before it was filed by Attorney Clements.  The court will note that the Debtors did receive a copy of the chapter 13 plan and a copy of the Confirmation Order entered

---

[8]A debtor's plan is supposed to be executed by the debtor, but, as discussed in greater detail shortly, the Debtors' never signed their plan.

[9]Pursuant to Administrative Order 04-1, debtor's counsel is required to have an actual debtor's signature on the petition and plan and to retain such actual signature for up to three years after the case is closed.  Attorney Clements testified that the Debtors did not sign their petition and plan and also indicated that there are other cases she has filed without a debtor's original signature.

[10]In searching through the court file, the court only found one document that contained an original signature-Form B21, the Debtors' Social Security Form.  (Bk. Doc. 5).  At the conclusion of the hearing the court directed Attorney Clements to produce the Debtors' original file.  Shortly thereafter Attorney Clements filed a letter to the court, stating that she had turned her original file over to the Debtors approximately a month prior to the hearing.  (Bk. Doc. 65). Debtors' new counsel produced documents purporting to be the file received from Mrs. Clements.  This file did not include Form B21. The file also did not include a bankruptcy questionnaire or copies of the Debtors' bills, despite the fact that an employee of Attorney Clements, Christopher Clements (no relation), testified that he made copies of such data during one of the Debtors' visits.  There were no handwritten notes in the file.  Attorney Clements testified that her office was broken into during the time period in question and that some stuff was stolen, but she gave no testimony as to how this alleged break-in related to her inability to produce complete records or as to how this alleged break-in related to the issue of whether she received any money from the Debtors prepetition.

5

December 6, 2007,[11] both of which show that Attorney Clements requested, and was awarded, an attorney fee of $850.[12]

Because this controversy revolves around Attorney Clements' fee in this case, this court believes that an examination of the fees charged by Attorney Clements in other cases is warranted for comparison purposes. As such, the court reviewed all of the bankruptcy cases filed by Attorney Clements during the time period February 3, 2006 through April 29, 2009. This review revealed that, in every case except the Debtors', Attorney Clements charged fees ranging from $1,500 to $2,000. (BA Exhibit 4). Attorney Clements filed 46 Chapter 13 bankruptcy cases during the time period February 3, 2006 through October 5, 2007, the date the Debtors' petition was filed: one of these cases (the Debtors') reflects an attorney fee of $850; two reflect an attorney fee of $1,500; twenty-nine reflect an attorney fee of $1,600; two reflect an attorney fee of $1,700; ten reflect an attorney fee of $1,800; one reflects an attorney fee of $1,900; and one reflects an attorney fee of $2,000. (BA Exhibit 4). The court also reviewed the fees charged by Attorney Clements in the twelve Chapter 13 cases filed by Attorney Clements during the time period October 5, 2007 through February 6, 2008, the six-month time period after the Debtors' bankruptcy petition was filed. The court files reveal that Attorney Clements charged $1,600 in seven cases, $1,700 in two cases, and $1,800 in three cases. The court also reviewed the fees charged by Attorney Clements in the twenty-eight Chapter 13 cases filed by Attorney Clements during the time period February 6, 2008 through

---

[11]The Debtors are on the mailing matrix and the court file reflects that the chapter 13 plan and the Confirmation Order were all mailed to the mailing matrix.

[12]The Chapter 13 Trustee has disbursed approximately $740.00 of this fee to Attorney Clements.

April 29, 2009. The court files reveal that Attorney Clements charged $1,600 in two cases, $1,800 in seventeen cases, $1,900 in six cases, and $2,000 in three cases. As indicated by the above evidence, Attorney Clements charged the Debtors a much lower fee than the fee charged in any other case. Attorney Clements testified that she charged the Debtors a low fee because "they were in a mess." However, there was no evidence/testimony as to why the Debtors' problems warranted special consideration when most debtors have similar financial problems. Attorney Clements also tried to explain the low fee by suggesting in her testimony that she had a prior personal connection with Mrs. Rancher. However, there was no evidence of any prior personal connection, and Mrs. Rancher testified that she had never met Attorney Clements prior to the meeting at Attorney Clements' office.[13] The court would also note that Attorney Clements did quite a bit of work in this case. The Debtors had multiple legal problems: Attorney Clements testified that she called and met with realtors involved in the pending sale of the Debtors' home; Attorney Clements also testified that she was successful in avoiding a lien on an air conditioner that was installed in the Debtors home, and that such efforts resulted in the Debtors receiving the air conditioner free of charge.

The Debtors and Attorney Clements were not the only parties to testify in this matter, an employee of Attorney Clements was also called to testify. There were two employees working at Attorney Clements' office during the time in question: Jennifer Cole and Christopher Clements (no relation to Attorney Clements). Jennifer Cole appears to be the person to whom the Debtors allege they gave the $1,200. She was Attorney Clements' secretary at the time, but did not testify at the hearing because she moved out of town and left Attorney Clements' office in May, 2008.

---

[13]In fact, Mrs. Rancher testified that she found Attorney Clements by looking in the phonebook.

Christopher Clements is still employed at Attorney Clements' office, and he did testify at the hearing.

Christopher Clements began working for Attorney Clements in June, 2007. When Christopher Clements started, he was a bit of an everyman: he worked the front desk, gave out receipts, and filed documents. He testified that he remembers working the afternoon the Debtors came in,[14] and that he gave the Debtors a bankruptcy questionnaire, made copies of all the bills/financials the Debtors brought in, and then sent the Debtors back to Attorney Clements' office to talk to her. He further testified that he was working the front desk the afternoon the Debtors came in and that no money was paid to him or Jennifer Cole.

In support of his assertion that Debtors had not paid him or Jennifer Cole any money prepetition, Christopher Clements testified that a search of the Quick Books' records revealed that no receipt had been issued to the Debtors during the time they were represented by Attorney Clements.[15] Christopher Clements testified that a search of Quick Books' records could be done either by name or by date. He further testified that he searched for a receipt using the Debtors' name, but did not indicate under which name he conducted the search. This information is important as there are some discrepancies in the name of Mrs. Rancher. First, while Mrs. Rancher is going by the name Tameka Rancher now, the bankruptcy petition was filed using her maiden name, Tameka

---

[14]Christopher Clements remembers when the Debtors came in because Attorney Clements had just returned to work after having surgery, and he was working more than usual during the time in question. In addition to working more than usual, Christopher Clements had to drive Attorney Clements to and from work, as well as to all of her appointments, because it was difficult for Attorney Clements to drive.

[15] As Christopher Clements was the one most familiar with the computerized receipt system, he testified about the efforts to determine whether or not a receipt had been issued to either of the Debtors.

Church. Second, there is evidence that Mrs. Rancher occasionally spells her name Tamekia. The court does not know whether Christopher Clements searched for receipts using all possible names under which the receipt could have been filed. Without knowing what name(s) Christopher Clements used in his search, the court cannot determine whether an exhaustive name search was conducted. In addition, there was no evidence that Christopher Clements conducted a search of the computer system by dates, despite the fact that he testified that such a search was possible. Christopher Clements also testified that, in his estimation, four to six receipts were generated at Attorney Clements office every week. However, no computer records were produced to reflect receipts generated by the office computer system during the time at issue, despite the fact that voluminous phone records were produced to reflect incoming and outgoing calls from Attorney Clements' office.

Christopher Clements' testimony was important in another respect: He was the only witness to testify in opposition to the written receipt for $35 dated September 17, 2007, produced by the Debtors. The Debtors produced the $35 receipt and testified that such receipt was given to them as result of the money they paid to Attorney Clements' office for credit counseling. Christopher Clements' testimony contradicts this assertion by the Debtors. First, Christopher Clements testified that Attorney Clements' office was not issuing hand-written receipts at the time the Debtors came in to see Attorney Clements. Shortly after he began working at Attorney Clements' office, he upgraded her computer and phone systems, and part of such upgrade was to install Quick Books accounting software. After the installation of Quick Books, all receipts were generated using the software and printed off the computer. Christopher Clements further testified that even if someone had mistakenly issued a hand-written receipt, the $35 receipt did not match the written receipts that

9

Attorney Clements' office issued prior to computerizing the office. Christopher Clements also testified that it was not the practice of Attorney Clements' office to issue receipts for credit counseling. This is true because Attorney Clements' clients normally take credit counseling themselves. Someone at Attorney Clements' office would give the clients the phone number of a counseling service, and the clients would use their own credit card to pay the $35 fee. However, if a client did not have a credit card,[16] the client would bring $35 in cash to the office and then someone at the office would immediately pay for the credit counseling over the telephone. No receipt would be issued in this instance. There was no evidence of whether the Debtors paid for their credit counseling with their credit card or Attorney Clements' credit card. It should be noted that nothing on the $35 receipt indicates that it was issued by Attorney Clements' office and that the initials on the receipt are not consistent with the initials of anyone at Attorney Clements' office. It should also be noted that the Certificate of Credit Counseling filed in the Debtors' bankruptcy case is dated October 3, 2007, not September 17, 2007 as reflected on the $35 receipt. (Bk. Doc. 4).

## CONCLUSIONS OF LAW

The BA questions whether the Disclosure Statement certified by Attorney Clements on October 5, 2007 and filed with the Debtors' petition on October 5, 2007, is an accurate reflection of how much Attorney Clements was paid by the Debtors prepetition. The BA became concerned about the accuracy of the Disclosure Statement filed by Attorney Clements when Mrs. Rancher called the BA's office to assert a grievance against Attorney Clements. During the course of the phone call, Mrs. Rancher stated that she was frustrated because she had paid Attorney Clements $1,200 to file

---

[16]A review of the Debtors' bankruptcy schedules indicate that the Debtors did have a credit card.

a bankruptcy petition and now Attorney Clements refused to communicate with her or her husband, the joint debtor. This statement caused the BA concern because the $1,200 figure cited by Mrs. Rancher was inconsistent with Attorney Clements' Disclosure Statement, which stated that Attorney Clements was paid $0.00 by the Debtors prepetition. As a result of these inconsistencies, the BA moved for an examination of the Debtors' transactions with Attorney Clements pursuant to 11 U.S.C. § 329[17] and Federal Rule of Bankruptcy Procedure 2017.[18]

After reviewing the testimony and the exhibits submitted at the hearing, one fact in this case is undisputed: At no point did Attorney Clements disclose receipt of $1,200 in the Debtors' case. However, this fact has legal significance only if: (1) Attorney Clements actually received $1,200 from the Debtors; and (2) Attorney Clements had a duty to disclose the receipt of the $1,200 pursuant to § 329.

The court will first determine whether Attorney Clements actually received $1,200 from the Debtors. Unfortunately, there is no direct physical evidence concerning the receipt or non-receipt of the $1,200, as this is primarily a case of she-said/they-said. Therefore, the court's determination of whether Attorney Clements, through her secretary, received the $1,200 will depend largely on whether the BA or Attorney Clements has the burden of proof. This court finds that Attorney Clements has the burden of proof on all issues arising under § 329. <u>In re Rheuban</u>, 121 B.R. 368, 383 (Bankr. C.D. Cal. 1990) (finding that attorney seeking compensation under § 329 has the burden

---

[17]All section references are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise stated.

[18]All rule references are to the Federal Rules of Bankruptcy Procedure unless otherwise stated.

11

of proof on all issues arising under § 329).[19]  The court is aware that this places Attorney Clements in the unenviable position of having to prove a negative, but a party is not displaced of its burden of proof merely because such burden requires proof of a negative.  Batlan v. TransAmerica Commercial Finance Corp. (In re Smith's Home Furnishing, Inc.), 265 F. 3d 959, 967 (9th Cir. 2001); Wallach v. Kurowski (In re Buffalo Restaurant Equip., Inc.), 284 B.R. 770, (Bankr. W.D.N.Y. 2002).

The BA came forward with the following evidence that tends to show that Attorney Clements did receive $1,200 from the Debtors prepetition: (1) The Debtors' testimony; (2) Mrs. Rancher's unsolicited disclosure to the BA that the Debtors paid Attorney Clements $1,200 prepetition; (3) The fact that Attorney Clements' disclosed fee is much lower than the fees charged in any of her other cases; and (4) The fact that the Debtors went to Acceptance Loan shortly after meeting with Attorney Clements the first time and took out a loan which resulted in the Debtors receiving a  check for $1,253.58, almost the exact amount the Debtors allege they were charged by Attorney Clements. In opposition to the BA's evidence, Attorney Clements introduced the following evidence that tends to show that Attorney Clements did not receive $1,200 from the Debtors prepetition: (1) Attorney

---

[19]Unfortunately, this court was unable to find a case finding that an attorney for the debtor bears the burden of proof on issues of disclosure pursuant to § 329(a).  However, this court found numerous cases finding that an attorney for the debtor bears the burden of proof on issues of reasonableness pursuant to § 329(b).  See, e.g., In re Jackson, 401 B.R. 333, 341 (Bankr. N.D. Ill. 2009) ("The attorney whose fee has been called into question, not the party questioning, bears the burden of showing the fee's reasonableness."); Snyder v. Dewoskin (In re Mahendra), 131 F. 3d 750, 757 (8th Cir. 1997) ("Section 329 requires the attorney to show that the agreed compensation for the legal services is reasonable."); In re Mortakis, 405 B.R. 293, 297(Bankr. N.D. Ill. 2009) ("'Once a question has been raised about the reasonableness of the attorney's fee under [§] 329, it is the attorney himself who bears the burden of establishing that the fee is reasonable.'" (quoting In re Geraci, 138 F.3d 314, 318 (7th Cir. 1998)).  In the absence of a provision to the contrary, this court can think of no reason why the burden of proof would rest with one party as to one subsection of § 329, and another party as to another subsection of § 329.

12

Clements' testimony; (2) Christopher Clements' testimony; (3) The fact that the Debtors were not able to produce a receipt for the $1,200; (4) The fact that the Debtors produced a $35 receipt allegedly from Attorney Clements' office, but nothing on the receipt indicated that the receipt was in fact from Attorney Clements' office; (5) The fact that the Debtors received a copy of their plan and the Confirmation Order, but said nothing for a year and half about the fact that both stated that Attorney Clements received $0.00 prepetition; and (6) The fact that a search of Attorney Clements' records did not reveal a receipt written to the Debtors.

After reviewing the testimony and exhibits admitted at the hearing, as well as the court records, this court finds that Attorney Clements failed to meet her burden of proof to show that she did not receive $1,200 from the Debtors prepetition. While Attorney Clements and her employee Christopher Clements both testified that Debtors did not pay Attorney Clements $1,200 prepetition, the circumstantial evidence is largely against them. The only evidence that supports the testimony of Attorney Clements and her employee Christopher Clements is: (1) the lack of a receipt for the $1,200, which after a year and a half is not unexpected; (2) the fact that a search of Attorney Clements' computerized receipt software did not reveal any receipt written to the Debtors, which, as discussed in more detail in the Finding of Facts, is not persuasive because the testimony of Christopher Clements was not clear regarding the thoroughness of the search; (3) the lack of evidence indicating that the $35 receipt proffered by the Debtors was issued by Attorney Clements' office; and (4) the fact that the Debtors waited a year and a half to raise this issue, even though they received a copy of the proposed plan and the Confirmation Order, both of which showed that nothing had been paid to Attorney Clements prepetition and $850 in attorney fees was to be paid post-confirmation. None of this evidence is particularly persuasive. The following evidence proffered

13

by the BA and the Debtors is much more persuasive: (1) the fact that Mrs. Rancher's assertion that the Debtors paid Attorney Clements $1,200 prepetition was unsolicited and the fact that Mrs. Rancher had no reason to know the consequences Attorney Clements would face if Attorney Clements received money prepetition that was not disclosed: (2) the fact that the Debtors went to Acceptance Loan Company, refinanced a car, and received a check for $1,252.58 shortly after the Debtors' initial meeting with Attorney Clements; and (3) the fact that the lowest fee charged by Attorney Clements in other cases was $1,500, $650 more than the fee charged in the Debtors' case.[20]

As there is no direct, physical evidence in this case, and the circumstantial evidence that has been proffered to this court weighs heavily in favor of the BA's position, this court finds that Attorney Clements failed to meet her burden of proof. The court might have decided differently if the Debtors had signed their petition and Statement of Financial Affairs because, at least then, the court would have documents executed by the Debtors under penalty of perjury inconsistent with their testimony to the court.[21] However, the Debtors did not sign their petition or their Statement of

---

[20]Attorney Clements' assertion that she charged the Debtors a lower fee because "they were in a mess" does not explain the low fee in this case: Every client who goes to see an attorney about potentially filing a bankruptcy case is "in a mess" or they would not be considering bankruptcy; therefore, this explanation hardly brings the court any closer to understanding why Attorney Clements would charge the Debtors less than she charged any of her other bankruptcy clients, especially considering that the Debtors' bankruptcy case involved legal issues that do not typically arise in bankruptcy cases. Attorney Clements also tried to explain the low fee by suggesting a prior relationship with the Debtors, Mrs. Rancher in particular. However, Attorney Clements did not give detailed information about this personal relationship, and Mrs. Rancher denied having a prior relationship with Attorney Clements, testifying that she got Attorney Clements' name out of the phonebook. There is no evidence of a prior relationship and so the court cannot accept such a relationship as a plausible explanation for the low fee charged in this case.

[21] The Official Forms for the filing of the Debtors' bankruptcy petition requires that the schedules and Statement of Financial Affairs be executed under penalty of perjury. The Debtors' proposed plan is to be signed by the Debtors. Rule 1008 requires all petitions, lists, schedules,

14

Financial Affairs and the court cannot find in favor of Attorney Clements on this issue.

Because Attorney Clements failed to meet her burden of proof, in the eyes of the law she did receive $1,200 from the Debtors prepetition. Therefore, the court must now determine whether there was a duty to disclose the receipt of the $1,200. Subsection (a) of § 329 requires that an attorney representing a debtor in a bankruptcy case, or an attorney representing a debtor in a case related to a debtor's bankruptcy case, file a statement detailing any compensation received from the debtor within the year preceding the commencement of the debtor's bankruptcy case if such compensation was for "services rendered or to be rendered in contemplation of or in connection with the [debtor's bankruptcy] case."[22] 11 U.S.C. § 329(a). There is no dispute that Attorney Clements represented the Debtors in their bankruptcy case. There is also no dispute as to the time-line set forth by the Debtors in their testimony as to when they first met with Attorney Clements regarding their financial troubles. This leaves the court to determine whether the $1,200 was for "services rendered or to be rendered in contemplation of or in connection with the [bankruptcy] case." The phrase "in contemplation of or in connection with" is written in the disjunctive. Therefore, attorney's fees are subject to review under § 329 if legal services were rendered "in contemplation of" a bankruptcy

_____

statements, and amendments thereto to be verified or contain an unsworn declaration as provided in 28 U.S.C. Section 1746. Administrative Order 04-01 requires debtor's counsel to retain an original signature on the debtor's petition and the debtor's plan. This unfortunately did not occur in this case. In this case Attorney Clements testified that she did not have the Debtors sign the petition or the plan.

[22]Section 329(a) provides: "Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." 11 U.S.C. § 329(a).

15

case, or if the services were rendered "in connection with" a bankruptcy case. <u>In re Keller Financial Serv. of Florida, Inc.</u>, 248 B.R. 859, 877-878 (Bankr. M.D. Fla. 2000). The two phrases have different meanings, and different standards apply with respect to each. <u>Id.</u> "[T]he subphrase 'in contemplation of' denotes a subjective element. Courts may review fees if the underlying services were performed 'at a time when the debtor was contemplating bankruptcy. Under this test it does not matter what the nature of the legal services are.'" <u>Id.</u> at 878 (quoting <u>In re Rheuban</u>, 121 B.R. 368, 378 (Bankr. C.D. Cal. 1990)). "The controlling question is the state of mind of the debtor, i.e., whether, in making the transfer, the debtor is influenced by the possibility or imminence of a bankruptcy proceeding.'" <u>Id.</u> (quoting <u>In re Dixon</u>, 143 B.R. 671, 676 n.3 (Bankr. N.D. Tex. 1992)).

Both Debtors testified that they went to see Attorney Clements about a possible bankruptcy filing and were told by Attorney Clements that she required $1,200 before she would file a bankruptcy petition for them. The Debtors allege that they then paid Attorney Clements $1,200 so that she would file a bankruptcy petition on their behalf. It is clear that the $1,200 was paid "in contemplation of" bankruptcy. The phrase "in connection with" denotes an objective element. Courts may review fees if the underlying "'services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case.'" <u>Id.</u> at 879 (quoting <u>In re Rheuban</u>, 121 B.R. 368, 378 (Bankr. C.D. Cal. 1990)). "The phrase may include services related to the precipitating cause of the bankruptcy, or services which are inextricably intertwined with the bankruptcy." <u>Id.</u> Again, the Debtors allege that they paid Attorney Clements $1,200 so that she would file a bankruptcy petition on their behalf. It is hard to imagine services more connected with a bankruptcy case than those services which bring the bankruptcy case into being.

Based on the above discussion, this court finds that Attorney Clements represented the

16

Debtors in their bankruptcy case; finds that any money that Attorney Clements received from the Debtors was received within the year preceding the Debtors' bankruptcy case; and finds that Attorney Clements' services were rendered both "in contemplation of" and "in connection with" the Debtors' bankruptcy case. Therefore, all of the requirements of § 329(a) are met, and Attorney Clements had a duty to disclose the receipt of the $1,200 in her Disclosure of Compensation.

Having determined that Attorney Clements had a duty to disclose the receipt of the $1,200, the court must now decide what, if any, sanctions are appropriate. Section 329 was enacted, at least in part, to give bankruptcy courts the power to "oversee attorney-client relationships in bankruptcy cases." In re Jackson, 401 B.R. at 342. Congress wanted bankruptcy courts to oversee such relationships due to concerns of overreaching debtor's attorneys and concerns that a "'failing debtor' will be tempted 'to deal too liberally with his property in employing counsel to protect him in view of financial reverses and probable failure.'" Id. (quoting In re Perrine, 369 B.R. 571, 580 (Bankr. C.D. Cal. 2007)).[23] So that the court could employ "careful scrutiny" in overseeing attorney-client relationships involving debtors, Congress enacted § 329 which requires every attorney representing a debtor in a bankruptcy case to file a statement disclosing all compensation received for services rendered in contemplation of or in connection with a debtors' bankruptcy case. 11 U.S.C. § 329. Because the disclosure requirement is designed to protect the debtor and his property from the debtor's attorney, the failure to provide such complete and precise disclosures will leave the attorney who failed to disclose subject to the court's "broad and inherent authority to deny [or disgorge] any

---

[23]These concerns are laid out in the following legislative history to § 329: "Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." H.R. REP. NO. 99-595, at 329 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6285.

17

and all compensation." <u>Law Offices of Nicholas A. Franke v. Trustee (In re Lewis)</u>, 113 F. 3d 1040, 1045 (9th Cir. 1997). <u>See also</u> <u>In re Mortakis</u>, 405 B.R. at 297 ("Failure to disclose . . . is sanctionable and can include partial or total denial of compensation, as well as partial or total disgorgement of fees already paid."). It is within the court's discretion to determine the extent to which compensation should be denied or disgorged. <u>In re Mortakis</u>, 405 B.R. at 297. Many courts deny all compensation in cases of defective disclosure. <u>Id.</u> However, the court does not believe that a denial of all compensation is appropriate in this case. Based upon the facts and the law applicable to this case, as discussed above, the court finds that requiring Attorney Clements to pay $1,200 to the Chapter 13 Trustee to be applied to the Debtors' bankruptcy case within 30 days of the entry of the order disposing of this matter and also denying Attorney Clements the portion of her $850 fee that the Chapter 13 Trustee has not yet disbursed are appropriate sanctions.

Along with his request that the court determine the fee received by Attorney Clements in this case pursuant to § 329(a), the BA also requested that the court determine whether such fee is reasonable pursuant to § 329(b). The court will now do so. Because Attorney Clements failed to prove that she did not receive the $1,200, this court must determine whether $1,940 constitutes a reasonable fee in this case.[24] Administrative Order 06-04 provides that attorneys for debtors in Chapter 13 cases are relieved from filing detailed fee applications when the fees charged and disclosed do not exceed $2,500. However, while Administrative Order 06-04 relieves debtor's counsel from filing detailed fee applications, it also provides that the court may reduce fees to an appropriate amount if the fees charged are "excessive based upon the complexity of the case or the

_____

[24]The $1,940 fee is comprised of the $1,200 deemed to have been received by Attorney Clement prepetition, as well as the $740 paid by the Chapter 13 Trustee pursuant to the Confirmation Order.

attorney's lack of competency." Attorney Clements bears the burden proving that the fee she received is reasonable. In re Jackson, 401 B.R. at 341 ("The attorney whose fee has been called into question, not the party questioning it, bears the burden of showing the fee's reasonableness."); In re Mahendra, 131 F. 3d at 757 ("Section 329 requires the attorney to show that the agreed compensation for the legal services is reasonable."). After a review of the testimony in this case and the court file, this court finds that Attorney Clements has shown that $1,974 is a reasonable fee for the services she provided to the Debtors in this case.[25] The average hourly rate for consumer bankruptcy attorneys is between $150 and $250. As such, Attorney Clements needed to show the court that she performed 8-13 hours of billable work for the Debtors. Attorney Clements performed the following services for the Debtor during the year and a half that she represented them: (1) She had at least two appointments with the Debtors in which she discussed their bankruptcy options and gathered pertinent information; (2) She filled out the Debtors' petition and filed it with the court; (3) She put together the Debtors' plan and filed it with the court; (4) She got the Debtors' plan confirmed; (5) She filed a Motion to Modify Debtors' Confirmed Plan, which was granted; (6) She spoke with Debtors' realtor numerous times and was able to get Debtors out of the contract to sell their house; (7) She filed a Motion to Suspend Plan Payments, which was granted; and (8) She filed a Motion to Withdraw as Debtors' counsel upon Debtors' request. This court believes that Attorney Clements spent at least 8-13 hours performing these tasks and finds that $1,974.00 is a reasonable fee for the services performed by Attorney Clements in the Debtors' case. In addition, this court

_____

[25] The Debtors' confirmed plan provides for a plan length of 60 months. This court finds the fee to be reasonable despite the fact that Attorney Clements will have only represented the Debtors for the first year and a half. This is true because work in a bankruptcy case is front-loaded, meaning that the great majority of the work done in a case is done before a case is even filed.

19

does not believe that any of the factors enumerated in § 330(a)(3) necessitate a finding that $1,974 is not a reasonable fee for the tasks that Attorney Clements performed for the Debtors.[26]

The BA's motion also requests that Attorney Clements be ordered to produce a sworn statement concerning whether she has asked for and/or collected fees in any other bankruptcy case that were not disclosed in a Disclosure Statement for that case. The BA indicated that the statement should include fees of any nature, including but not limited to, attorney fees, appointment fees, and fees for post-petition and/or post confirmation services. This court does not believe that such an order is warranted and denies this request.

## CONCLUSION

Based upon all the evidence, this court finds that Attorney Clements failed to meet her burden

---

[26] Section 330(a)(3) provides the following guidance in determining a fee's reasonableness:

> (3) In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including-
>
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 329(a)(3).

20

of proving that she did not receive $1,200 from the Debtors prepetition and therefore Attorney

Clements failed to disclose the receipt of the $1,200 as required by 11 U.S.C. § 329 and Federal Rule

of Bankruptcy Procedure 2016.  As a result, this court imposes the following sanctions on Attorney

Clements:  Attorney Clements is required to pay $1,200 to the Chapter 13 Trustee to be applied  to

the Debtors' bankruptcy case within 30 days of the entry of the order disposing of this matter;

Attorney Clements is denied her entitlement to the portion of her $850 fee that the Chapter 13

Trustee has not yet disbursed.

**DONE and ORDERED** this August 21, 2009.

> /s/ C. Michael Stilson
> C. Michael Stilson
> United States Bankruptcy Judge